**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Crim. No. 18-CR-136 (JDB)** |
| | : | |
| **v.** | : | |
| | : | |
| **GARY WEEMS,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing.  For the reasons herein, the United States requests that the Court sentence the defendant to a period of 8 months of home detention, followed by one year of supervised release.  The government is not requesting any fines or restitution in this case other than required court costs.  In support of this sentence, the government states the following.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 10, 2018, a federal grand jury for the United States District Court for the District of Columbia returned a one-count indictment charging the defendant Gary Weems with Escape from Custody, in violation of 18 U.S.C. § 751(a).  On July 2, 2018, the defendant pled guilty to the sole count in the indictment pursuant to a plea agreement.  As part of the plea agreement, the government agreed to cap its allocution at the low-end of the guidelines range.  Notably, as detailed in the plea agreement and further discussed below, the parties disagree as to the base offense level (and therefore the total offense level) that is applicable to the offense in this case.  The parties are in agreement as to the defendant's criminal history category and the facts of the case.

1

The factual proffer agreed to by the defendant is as follows:

> On May 7, 1993, Defendant Weems was sentenced to five to fifteen years of prison on the charge of Possession of a Firearm During a Crime of Violence or Dangerous Offense, in violation of 22 D.C. Code § 3204 (D.C. Superior Court Case No. 1992 FEL 012297). On February 21, 1992, Defendant Weems was sentenced to three to nine years of prison on the charge of Robbery, in violation of 22 D.C. Code § 2901 (D.C. Superior Court Case No. 1990 FEL 013641). On July 7, 2017, the Defendant's parole was revoked and he was sentenced to serve 12 months of incarceration.

> In April of 2018, the defendant was serving his sentence at Rivers Correctional Institution, in Winston, North Carolina. As part of the defendant's sentence for the parole violation, he was allowed to complete the remainder of his sentence at the Residential Reentry Center in Washington, D.C. (Hope Village, Inc., 2840 Langston Place, S.E., Washington, D.C.).

> On April 12, 2018, the defendant signed a Furlough Application acknowledging his understanding of the terms of the furlough release conditions. The requirements of the furlough conditions specified that the defendant was to depart Rivers Correctional Institution, on April 30, 2018, and arrive in Washington, D.C. later that same day. Defendant Weems reported to the halfway house on April 30, 2018, and remained at the halfway house until May 3, 3018, when he signed out at 8:29 a.m. to 1422 Massachusetts Ave. and 300 Indiana Ave. NW, with a return time of 1:30 p.m. However, Defendant Weems never returned to Hope Village.

> At the time that Defendant Weems absconded from Hope Village, he was in the custody of the Attorney General, or confinement in an institution where the prisoner is confined by the direction of the Attorney General.

## DISCUSSION AND RECOMMENDATION

## I.    Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal

conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
(i) issued by the Sentencing Commission ...; and
(ii) that, . . . are in effect on the date the defendant is sentenced; ...

(5) any pertinent policy statement –
(A) issued by the Sentencing Commission ... and
(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## II.   Defendant's Sentencing Guidelines Calculation

### A.   Total Offense Level

As stated on pages 2-4 of the plea agreement, the government maintains that the base offense level for this case is 13, pursuant to U.S.S.G. § 2P1.1(a)(1).  That section provides a base offense level of 13 when an escape from custody occurs and "the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense."  The defendant maintains that the base offense level should be 8, pursuant to U.S.S.G. § 2P1.1(a)(2).  That section provides a base offense level of 8 for any escape not subject to section (a)(1)[1].

---

[1] § 2P1.1(a)(2) states the base offense level is 8 "otherwise," following § 2P1.1(a)(1).

The defendant's confinement here was due to a sentence given for a supervised release violation (rather than as part of the original sentence). The defendant therefore argues that this confinement was not by virtue of arrest on a felony or conviction of any offense. The government maintains that an order of custody for a supervised release violation must be confinement that is "by virtue of conviction of any offense," as such confinement would not have occurred absent the conviction of an offense.

Three separate circuits have evaluated the same provision at issue in this case and have found that the base offense level should be scored as 13 points. See United States v. Patterson, 230 F.3d 1168 (9th Cir. 2000); United States v. Evans, 159 F.3d 908 (4th Cir. 1998); and United States v. Pynes, 5 F.3d 1139 (8th Cir. 1993). The government is not aware of any circuits that have reached a contrary position and it does not appear that the District of Columbia Circuit has addressed the issue. Accordingly, the government requests that this Court follow the reasoning of the Ninth, Fourth and Eighth Circuits and score the base offense level here as 13. That reasoning is sound. As the Patterson court noted,

> Both Evans and Pynes chiefly rely upon a simple logical argument.
> If the defendant had not been convicted of the original crime, he
> would not have been sentenced to supervised release. If he had not
> been sentenced to supervised release, he would not have been
> under the conditions that he violated. Had he not violated the
> restrictions of his supervised release, the court could not have
> revoked his release status and returned him to custody. His final
> custody, therefore, is "by virtue of" his original conviction.

Patterson, 230 F.3d at 1170. The Pynes court observed that, although not determinative, the previous version of § 2P1.1(a)(2), before it was changed to read "otherwise," stated that 8 was the applicable base offense level when the confinement was by virtue of "awaiting extradition, pursuant to designation as a recalcitrant witness, or as a result of a lawful arrest for a

misdemeanor." Pynes at 1140.  It would be inappropriate to apply the lower base offense level here, where the defendant's confinement would not have occurred but for a felony conviction.

The PSR writer ultimately selected § 2P1.1(a)(2) as the applicable provision, after the PSR writer consulted with a representative from the U.S. Sentencing Commission.  The government subsequently contacted the same representative, who stated that the basis for the opinion was the language of the guidelines.  The representative advised that there were no application notes to provide guidance on this provision and that she had not reviewed the cases cited by the United States above.  The representative did not provide any contrary authority.  The government would therefore ask that this Court follow the reasoning of the circuits cited above.  The government previously filed its objection to the offense level calculation, based on the authorities cited above.  ECF No. 22.

The government also believes that a 4-point reduction under U.S.S.G. § 2P1.1(b)(3) should apply to the base offense level, as the defendant escaped from non-secure custody.  This would result in an offense level of 9.  Should the Court agree with the defendant and apply the base offense level under § 2P1.1(a)(2), the government believes that a 2-point reduction would then apply under § 2P1.1(b)(3), resulting in an offense level of 6.  The parties agree that a 2-point reduction is appropriate pursuant to U.S.S.G. § 3E1.1 given the defendant's acceptance of responsibility.  The government therefore maintains that the total offense level in this case is 7.  Should the Court apply the base offense level under § 2P1.1(a)(2), the total offense level would be 4.

**B.     Criminal History Category**

The parties agree that the defendant has 9 criminal history points, resulting in a criminal history category of IV.  Below is a summary chart of the defendant's previous convictions and points attributable to them.

| Offense of Conviction | Jurisdiction | Disposition | Points |
|---|---|---|---|
| Possession of Cocaine | District of Columbia (2012 CMD 7181) | 30 days incarceration | 1 point pursuant to § 4A1.1(c) |
| Possession of a Firearm During a Violent / Dangerous Offense | District of Columbia – 1992 FEL 12297 | 5 years to fifteen years | 3 points pursuant to § |
| Robbery | District of Columbia – 1990 FEL 13641 | 3 years to nine years | 3 points pursuant to § 4A1.1(a) |
| Bail Act (Misd.) | District of Columbia – 1988 FEL 5189 | 90 days suspended | 0 points pursuant to § 4A1.2(e) |
| Trespass/Misd. Theft | Baltimore Co., MD | 81 days imprisonment | 0 points pursuant to § 4A1.2(e)(3) |
| Att. Poss. Cocaine | District of Columbia – 1987 FEL 5189 | 90days jail | 0 points pursuant to § 4A1.2(e)(3) |
| Enter into Vehicle w/ Intent to Commit Malicious Mischief/Damage | Prince George's County, MD – C254137 | Probation before judgment | 0 points pursuant to § 4A1.2(e)(3) |
| Instant offense committed while under any criminal justice sentence | | | 2 points pursuant to §§4A1.1(d) and 4A1.2 |

**C.     Sentencing Guideline Range**

A total offense level of 7 and criminal history category of IV result in a guideline imprisonment range of 8 to 14 months.  The guideline range is in Zone B.  The guideline term of

supervised release is 1 to 3 years.  Should the Court adopt the total offense level advocated by

the defendant, the guideline imprisonment range would be 2-8 months of imprisonment, also in

Zone B.  The parties agree that the maximum term of imprisonment is 5 years and the maximum

term of supervised release is not more than 3 years.

**III.**     **Sentencing Recommendation**

As stated above, the government requests a sentence of 8 months of home confinement

followed by 1 year of supervised release.  This sentence is at the bottom of the applicable

guidelines range.

**A.**     **The Nature of the Offense**

The defendant walked away from Hope Village just three days after arriving.  To his credit,

he did turn himself in to law enforcement shortly after walking away from the halfway house.

During the pendency of this case, the defendant cut off his GPS ankle-monitoring bracelet and

tested positive for controlled substances; to his credit, he admitted this conduct to his pretrial

officer and has taken steps to address his underlying substance abuse and mental health needs

(including completing a residential drug treatment program and participating in outpatient

treatment following residential treatment).  The government recognizes that this is not a violent

offense nor one with an identifiable victim, but the criminal justice system cannot operate in a fair

manner if individuals can simply walk away from a properly adjudicated sentence without any

consequences.

**B.**     **The History and Characteristics of the Defendant**

The defendant has a lengthy criminal history and has spent significant periods of his life

incarcerated due to these convictions.  Those convictions include serious violent crimes involving

firearms.  Although those offenses are dated, during the course of his supervision, his parole was

revoked on a number of occasions and he struggled to comply with the terms of his supervised release. His noncompliance has largely centered around his use of narcotics and positive drug tests. As a result of those parole revocations, Defendant Weems has been in and out of incarceration for almost his entire adult life. The defendant's substance abuse issues appear to be deeply entrenched, as even during the course of his pretrial supervision in this case, he has tested positive for cocaine. The defendant's long-standing struggles with substance abuse need to be a priority to ensure his successful reentry to the community.

      C.      **The Need for the Sentence Imposed**

The government believes that a sentence of home confinement at the bottom of the guidelines is appropriate here, given the facts and circumstances of his Escape (including the fact that he turned himself in and was not re-arrested for a separate offense). Although Defendant Weems has had issues with noncompliance pending his sentencing, he appears to be taking steps to address the underlying mental health and substance abuse issues that contributed to that noncompliance. The government would request that while serving his sentence and while on supervised release, the Defendant participate in all substance abuse and mental health treatment deemed appropriate by his supervising officer, as well as participate in vocational training or employment.

The government credits the defendant for taking early responsibility for his actions in this case.  The government also credits him for engaging with his pretrial release (including his recent completion of inpatient drug treatment), and respectfully requests that the Court sentence the defendant to a period of 8 months of home confinement, to be followed by 1 year of supervised release.

Respectfully submitted,
JESSIE K. LIU
UNITED STATES ATTORNEY

By:
_____/s/_____
Laura Crane
D.C. 229454
Assistant United States Attorney
District of Columbia
Violent Crimes & Narcotics Trafficking Section
555 4th Street, NW, Room 4207
Washington, DC 20530
(202) 252- 7667
Laura.crane@usdoj.gov